NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

JANET FOX,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil Action No. 17-11421-BRM

**OPINION**

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Janet Fox's ("Fox") appeal from the final decision of the Acting Commissioner of Social Security ("Commissioner"),[1] denying her application for disability insurance benefits. Having reviewed the administrative record and the submissions filed in connection with the appeal pursuant to Local Civil Rule 9.1, and having declined to hold oral argument pursuant to Federal Civil Rule 78(b), for the reasons set forth below and for good cause shown, the Commissioner's decision is **AFFIRMED**.

**I.    BACKGROUND**

On November 13, 2012, Fox protectively filed an application for Supplemental Security Income ("SSI") disability benefits alleging, disability due to panic, anxiety, vascular issues, and stomach issues since January 1, 2012. (Tr. 199.) The claim was denied on March 28, 2013, and

---

[1] Upon the Appeals Council's Order denying Fox's request for a review of the Administrative Law Judge's ("ALJ") decision, the ALJ's decision became the final decision of the Commissioner. (Tr. 1.)

denied upon reconsideration on December 2, 2013. (Tr. 104, 133.) Fox filed a written request for hearing on January 29, 2014. (Tr. 131-32.) She appeared and testified at the hearing held on December 14, 2015. (Tr. 38-39.)

On June 2, 2016, the ALJ found Fox: (1) "has not engaged in substantial gainful activity since November 13, 2012, the application date"; (2) "has the following medically determinable impairments: depressive disorder NOS; anxiety disorder; coronary artery disease; osteoarthritis; hyperlipidemia; inverting papilloma of the right maxillary sinus and chronic sinusitis"; and (3) "does not have an impairment or combination of impairments that has significantly limited . . . the ability to perform basic work-related activities." (Tr. 19-22.) The Appeals Council denied Fox's request for review on September 15, 2017. (Tr. 1-6.) Therefore, having exhausted her administrative remedies, she brought this appeal on May 29, 2018. (ECF No. 1.)

## II.   STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether

2

an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

### III. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416 .920(a)(1). First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment"

3

or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679-80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.* (citation omitted). Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step

three involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen*, 482 U.S. at 146-47 n.5). An administrative law judge bears the burden of proof for the fifth step. *See id.* at 263.

## IV. DECISION

Fox argues the ALJ erred at step two of the sequential analysis, finding there was no "severe impairment" or "combination of impairments" that significantly limited her physical or mental ability to do basic work activities. (ECF No. 13 at 20.) The Commissioner argues the ALJ's decision—that Fox does not suffer from a "severe impairment"—was supported by substantial evidence. (ECF No. 14 at 17.)

The Court focuses its attention on step two, the point at which the ALJ denied Fox's application for benefits. Step two provides that "[i]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we [the Social Security Administration] will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also id.* §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities include: (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; (2) "[c]apacities for seeing, hearing, and speaking"; (3) "[u]nderstanding, carrying out, and remembering simple instructions"; (4) "[u]se of judgment"; (5) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (6) "[d]ealing with changes in a routine work setting." *Id.* §§ 404.1522(b)(1), 416.922(b)(1).

Fox has the burden to prove that her impairment or impairments are "severe" at this step. *McCrea v. Comm'r*, 370 F.3d 357, 360 (3d Cir. 2004). However, she "need only demonstrate

6

something beyond a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Id.* (citation omitted); *see Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) ("If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue."). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Newell*, 347 F.3d at 546. Therefore, "[i]f the evidence presented by [Fox] presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." *Id.* Reasonable doubts regarding severity should be resolved in favor of Fox. *Id.* at 547.

However, "[a]lthough the threshold in step two may be low, the standard of review remains the same." *Givens v. Comm'r of Soc. Sec.*, No. 13-5900, 2014 WL 3844810, at *4 (D.N.J. Aug. 4, 2014). "The Commissioner's denial at step two, like one made at any other step in the sequential analysis is to be upheld if supported by substantial evidence." *Id.* (quoting *McCrea*, 370 F.3d at 360). As such, even though a determination "at step two should be reviewed with close scrutiny, it still must be affirmed if supported by substantial evidence." *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). This Court cannot weigh the evidence or substitute its conclusions for those of the ALJ or Commissioner. *McCrea*, 370 F.3d at 361. Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360.

Here, the ALJ did not err at step two of the sequential analysis, but instead made a reasoned decision supported by substantial evidence in the record, such as Fox's admissions, treating doctors, and state examiners. *See Jakubowski v. Comm'r*, 215 F. App'x 104 (3d Cir. 2007) (stating

7

that an ALJ's decision as to the severity of impairments is supported by substantial evidence when the ALJ cites to specific medical records in his decision). The Court does not contend Fox is not suffering from several different impairments, but instead that the ALJ has supported its denial with substantial evidence. Whether or not this Court would have decided the factual inquiry differently is of no importance. *Hartranft*, 181 F.3d at 360.

Indeed, the ALJ's findings consist of approximately eight pages replete with evidence from the record demonstrating Fox's impairments individually or collectively were not severe. The ALJ found:

> After considering the evidence of record, . . . that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's and Ms. Santos' statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 24.) Specifically, the ALJ pointed to Fox's own hearing statements admitting:

> that she could care for herself, dress herself and previously cared for her mother until it became too difficult to continue. The claimant admitted she could read and write, performed some activities around the home, helped set the table and socialized with her father. She reported she sometimes went to the store, did her own laundry, cooked using a microwave, enjoyed crime shows and news programs and independently grocery shopped. In her Function Report, she admitted she had no trouble with personal care activities, straightened up her home, cooked for her father and otherwise prepared meals, did laundry, maintained the home, had no change in her ability to cook since her alleged disability, mopped floors, could go out alone, shopped in stores, paid bills, used a checkbook/money order, socialized with and had no trouble getting along with others and followed instructions "very well" (Exhibit 3E). The claimant did not report any difficulty with lifting, squatting, sitting, seeing, understanding, using her hands, bending, standing, reaching, kneeling, talking or hearing.

(Tr. 24; *see* Tr. 59-60, 206-21.)

Moreover, the ALJ cited clinical evidence demonstrating Fox's physical impairments were not severe:

> In March 2013, the claimant underwent a consultative examination, conducted by Francky Merlin, M.D. (Exhibit 6F). She reported a 2-year history of arthritis with pain localized to her hands and feet, but denied any history of physical therapy. She reported she had daily pain that was worsened with use of her hands and standing. Notwithstanding this pain, the claimant admitted she could take care of her personal hygiene and perform household chores and only used Motrin. Physical examination revealed a normal gait/station, no difficulty arising from a sitting position or with getting on/off the examining table, unimpaired grasping strength/manipulative functions, an ability to heel/toe walk and an ability to flex forward 0-90 degrees and squat. Tenderness was elicited in the fingers of both hands, but she had normal sensation, 5/5 motor strength, normal reflexes and negative straight leg raising with only minimally decreased range of motion of some joints. Cardiac testing and a comprehensive blood panel were also normal. Dr. Merlin diagnosed the claimant with polyarthralgia.
>
> . . . .
>
> The following month, the claimant returned to David Altimore, D.O., a treating physician; she had not seen him since November 2010 (Exhibit 9F). She complained of dyspnea on exertion and chest pain and noted significant stress at home over the past couple of years due to prior caretaking responsibilities for her mother. The claimant admitted her dyspnea and chest pain were intermittent and aside from grief/bereavement over her mother's death, offered no other complaints. Physical examination revealed the claimant was alert and oriented and not in apparent distress and was essentially normal with no significant findings. Dr. Altimore recommended a stress echocardiogram and observed diagnostic impressions that included chest pain/dyspnea on exertion of unknown etiology, hyperlipidemia and osteoarthritis. Follow-up evidence reveals the claimant's echocardiogram was normal with the claimant at 88% of predicted maximum heart rate for age and with her having no chest discomfort with this activity. Furthermore, the claimant had a normal blood pressure response to exercise, no exercise-induced hypoxemia and normal exercise capacity. Dr. Altimore recommended no further workup and recommended a continuation of her existing regimen. Her LDL level was elevated and Dr. Altimore recommended a medication change and dietary changes to address this factor.
>
> In June 2013, the claimant again sought emergency department

>  treatment for chest pain, with tenderness elicited in the right T4
> dermatome distribution (Exhibit 11F). However, diagnostic
> imaging was normal and she was discharged in stable condition with
> tramadol. She also sought treatment earlier this month for sinus
> pressure/congestion and postsurgical symptoms from a recent
> gingival graft, but a July 2013 pulmonary function test was
> normal (Exhibits 11F; 12F/158). July 2013 progress notes
> indicated the claimant remained a caretaker for her father and a
> disabled cousin, despite noting shortness of breath on exertion and
> back pain (Exhibits 12F/34, 14; 17F/504).
>
>         . . . .
>
> In June 2014, Dr. Altimore again saw the claimant and observed that
> she reported feeling relatively well since she last saw this physician in
> April 2013 (Exhibit 16F). She offered no complaints of chest pain,
> shortness of breath, nausea, diaphoresis, palpitations or any symptoms
> related to near-syncope, and was tolerating her regimen. Dr. Altimore
> found the claimant was stable from a cardiovascular standpoint and
> strongly recommended dietary changes due to her hyperlipidemia and
> intolerance of statins. Several months later, she endorsed some
> intermittent palpitations in the epigastric area, but reported they were
> not associated with syncope, near syncope or any evidence for
> hemodynamic compromise. Overall, she admitted to feeling well and
> offered no other specific complaints. Dr. Altimore appeared
> unconcerned regarding these palpitations and recommended
> observation for the time being.

(Tr. 25-27; *see* Tr. 366-71, 380, 617-18.)

Regarding her mental impairments, the ALJ cited evidence that Fox

> also underwent a psychiatric consultative examination in March
> 2013, conducted by Wm. Dennis Coffey, Psy.D. (Exhibit 7F).
> Notably, when asked why she applied for disability benefits, the
> claimant replied that, essentially, she was told to do so by state
> assistance/welfare workers. When asked why she could not work,
> the claimant reported she had not done anything for years, did not
> know how to use a computer, had minimal education and had been
> depressed since her mother's death; she reported that her "main
> mission in life was to take care of her mother." The claimant
> admitted to a history of outpatient psychiatric treatment at around
> age 12, but was not treated again she was a victim of an assault 20
> years later. She reported she was previously prescribed Valium, but
> did not want to take medications due to her fear of addiction. She
> denied any history of psychiatric hospitalizations and was not on any

10

current psychiatric medications. The claimant described a typical day as involving doctor appointments, cleaning and caring for her father. However, she went on to indicate she could not do any chores and had minimal social interactions, but attended church on a weekly basis and had been in a 10-year relationship with a man. She also admitted she had a close girlfriend and was able to drive a vehicle. Mental status examination revealed some anxiety regarding an impending surgery, but she did not have any problems completing a basic information form, related adequately to the examiner and displayed no oddities in posture/mannerisms. Psychomotor activity was normal, she exhibited a normal gait and she maintained normal eye contact with normal speech. Stream of conversation was normal, there was no evidence of a thought disorder, she had no problem participating in the interview, mood was normal (with an appropriate affect) and there was no evidence of obsessions, compulsions or suicidal/homicidal thinking. Furthermore, the claimant was fully oriented, exhibited intact attention, was able to identify the current and former Presidents, could perform serial 7s, could perform simple mathematical calculations, recalled 6 digits forward and 4 digits in reverse, could repeat 3 objects immediately and 2/3 after 5 minutes, displayed adequate proverb interpretation, had low average estimated intelligence and displayed adequate insight/judgment.

. . . .

In March 2013, Dr. Coffey opined that the claimant's history and this evaluation reflected symptoms of anxiety and depression, but that she did not meet the criteria for a major mental disorder that would interfere with her ability to work (Exhibit 7F). He noted she was able to travel independently to unfamiliar places, use public transportation, respond to changes in a normal routine, work independently, had adequate understanding/memory/concentration, would not have difficulty remembering locations and basic work-like procedures, could understand/remember short and simple instructions, could make simple work-related decisions, had adequate pace/persistence and social interaction, could adapt to changes in the workplace, could handle work stress and did not appear motivated for employment. Though he diagnosed her with depressive disorder NOS and anxiety disorder with a rule out diagnosis of dependent personality disorder, he also assigned her a GAF score of 65, reflecting only mild functional difficulties. The undersigned assigns great weight to Dr. Coffey's findings, agreeing that although the claimant might have mental health impairments, they do not result in more than minimal work-related limitations and thus are nonsevere.

(Tr. 27-29; *see* 372-77.)

Since the function of this Court is simply to ensure that the ALJ's decision was supported by substantial evidence, and the above is only a sampling of the evidence cited by the ALJ in support of its decision, the Court finds the ALJ made a sound decision based on the evidence that Fox's impairments were not "severe." This Court cannot apply a more stringent standard than that of "substantial evidence," nor can it act as the fact-finder. *McCrea*, 370 F.3d at 360–361. Both Fox's own statements and the statements from several doctors provide this Court with "more than a mere scintilla" of evidence to support the ALJ's decision. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (defining substantial evince as "less than a preponderance of the evidence but more than a mere scintilla"). Accordingly, the ALJ's decision and Commissioner's denial of review of that decision are **AFFIRMED**.

V.     **CONCLUSION**

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**.

**Date:** January 31, 2018            */s/ Brian R. Martinotti*
                                                  **HON. BRIAN R. MARTINOTTI**
                                                  **UNITED STATES DISTRICT JUDGE**